**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JENNIFER NASH, individually and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br>v.<br><br>DUNKIN' BRANDS, INC. and INSPIRE BRANDS, INC.,<br><br>Defendants. | Case No. 1:26-cv-14319<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jennifer Nash ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Dunkin' Brands ("Dunkin') and Inspire Brands, Inc. ("Inspire") (collectively "Defendants"), and alleges, upon information and belief, including the investigation of counsel, as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of consumers who purchased Defendants' allulose-sweetened Dunkin' Zero beverages (the "Products"), during the applicable class period. Defendants formulate, label, market, advertise, distribute, and sell the Products throughout the United States, including Illinois. Defendants sell the Products at their Dunkin' store locations.

2. The Products include, but are not limited to, the following: Blackberry Tangerine Dunkin' Zero, Blushpop Dunkin' Zero, Candy Kiss Dunkin' Zero, Glamberry Dunkin' Zero, Green Apple Dunkin' Zero, Juicy Peach Dunkin' Zero, Midnight Apple Dunkin' Zero, Orchard Twist Dunkin' Zero, Sunzest Dunkin' Zero, and Tropical Mango Dunkin' Zero. Plaintiff reserves

the right to add to the list of Products if additional flavors, pack sizes, or configurations are identified during the litigation.

3. Defendants prominently market the Products to consumers as "Dunkin' Zero," "0g of sugar," and through substantially similar representations that communicate to consumers that the Products contain no sugar (collectively, the "Representations"). The Representations appear prominently when ordering the Products, so consumers perceive and appreciate them at the point of purchase.

4. The Representations are false and misleading. In reality, the Products are sweetened with allulose and, put simply, allulose is sugar. Allulose is a monosaccharide, and thus, is a sugar under the federal labeling definitions and under the ordinary meaning of the word. Allulose is also listed as the third principal ingredient of the Products, which means it is among the most prevalent ingredients by weight.

5. Upon information and belief, each serving of the Products contains at least 0.5 grams or more of allulose. That quantity is not trivial. It is a substantial quantity of sugar that is present in every serving that Plaintiff and class members consumed.

6. Consumers who buy products marketed as "Dunkin' Zero" or "0g of sugar" are typically health conscious. They may be managing blood glucose, limiting caloric intake, or following a diet intended to avoid sugar for medical, dietary, or personal reasons. Defendants' Representations were designed to attract exactly these consumers and to command a price premium over products containing sugar.

7. Plaintiff and class members paid a premium for the Products because of the Representations. Yet they did not receive what they paid for because the Products did, in fact, contain sugar.

8. As set forth below, Defendants' mislabeling of the Products violates applicable consumer-protection statutes and common law doctrines, including the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 § 505/1 *et seq*.

## THE PARTIES

9. Plaintiff Jennifer Nash is a citizen of Illinois and resides in this District.

10. Plaintiff Nash has routinely ordered from Dunkin' for herself and her nephew. She has ordered the Product about twice a week since the summer.

11. Defendant Dunkin' Brands, Inc. is a Delaware corporation with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021.

12. Dunkin' Brands, Inc. owns, operates, and franchises the Dunkin' brand in the United States; develops and formulates the beverages sold under the Dunkin' name, including the Products; and creates, approves, and disseminates the menu boards, signage, websites, mobile ordering content, press releases, and advertising through which the Products are marketed and sold at Dunkin' restaurants throughout the United States. Dunkin' Brands, Inc. also operates the www.dunkindonuts.com website on which the Representations appear and is the entity that Dunkin' identifies to consumers as the provider of its programs and online services.

13. Defendant Inspire Brands, Inc. is a Delaware Corporation with its principal place of business at 3 Glenlake Parkway NE, Atlanta, Georgia 30328.

14. Inspire Brands, Inc. acquired Dunkin' Brands Group, Inc. and its subsidiaries, including Dunkin' Brands, Inc., in December 2020, and since that time has owned, controlled, and directed the Dunkin' brand. Inspire Brands, Inc. participates in and approves the formulation, naming, advertising, marketing, and sale of the Products, and issued the press releases announcing and describing the Products as "zero-sugar" energy drinks.

15. At all times during the class period, Defendants were the designers, manufacturers, labelers, marketers, advertisers, distributors, and vendors of the Products throughout the United States.

16. Defendants, directly and through their parents, subsidiaries, affiliates, agents, and franchisees, including their affiliates Dunkin' Donuts Franchising LLC, Dunkin' Donuts LLC, and DD IP Holder LLC, and the franchisees that operate Dunkin' restaurants under Defendants' uniform brand, menu, and marketing standards, have substantial contacts with and received substantial benefits and revenue from and through the State of Illinois.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because the proposed Classes each include more than 100 members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one Class Member of the proposed classes is a citizen of a state different from Defendants.

18. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

19. This Court has personal jurisdiction over Defendants because Defendants routinely conduct business in the State where this district is located, have sufficient minimum contacts in this State, and have intentionally availed themselves of this jurisdiction by marketing and selling products, and by accepting and processing payments for those products within this State.

20. Defendants, directly and through their parents, subsidiaries, affiliates, agents, and franchisees, have substantial contact with and receive substantial benefits and revenue from and through sales of the Products in the State of Illinois.

21. Plaintiff purchased the Products in this District and suffered the injury alleged herein in this District.

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within this District, and Defendants conduct business in this Judicial District.

## FACTUAL ALLEGATIONS

**Defendants' Products and Representations**

23. Defendants formulate, label, market, advertise, distribute, and sell the Products to consumers throughout the United States. The Products are sold at Defendants' restaurant locations.

24. Defendants prominently represent that the Products as "zero sugar" and/or make other substantially similar representations communicating that the Products contain no sugar. As depicted below, Defendants' advertising for the Products bears the Representations in large, stylized letters:[1]

[1] Screenshots of the Products' advertising as displayed on Defendant's website. *Dunkin' Introduces Dunkin' Zero, A Zero-Sugar Energy Drink Made for Everyday Momentum*, DUNKIN', (Mar. 4, 2026), https://news.dunkindonuts.com/news/spring-2026.




25. The Representations continue to appear in the Products' description and other marketing materials. Dunkin's website advertises the Products as "Dunkin' Zero" and assures consumers that the Products have "0g of sugar."[2]




[2] *Dunkin' Zero*, DUNKIN', https://www.dunkindonuts.com/menu/categories/iced-refreshers-specialty-tea/specialty/dunkin-zero/ (last visited Nov. 13, 2026).

26. Defendants' own ingredient list states that the Products contain allulose. In fact, allulose is the third-listed ingredient on the ingredients list for the Products.[3]

| | |
|---|---|
| PRODUCT NAME | Blackberry Tangerine Dunkin' Zero - Large |
| CATEGORY | Dunkin' Zero Beverages |
| FLAVOR | Blackberry |
| INGREDIENTS | Sparkling Water; Blackberry Tango Energy Zero Sugar Flavored Syrup: Water, Allulose, Contains 2% or less of: Natural Flavors, Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Fruit & Vegetable Juice (Color), Potassium Sorbate (Preservative), Steviol Glycosides, Xanthan Gum, Vitamin/Mineral Blend (Pyridoxine Hydrochloride, Cyanocobalamin, Calcium D-pantothenate, Niacinamide Manganese Citrate, Zinc Sulfate, Maltodextrin). |
| ALLERGENS | |

27. The Nutrition Facts panels on the Products state that they contain zero (0) grams of Total Sugars and zero (0) grams of Added Sugars.[4] These declarations are accompanied by and reinforced by the website Representations.

| Dunkin' Zero Beverages | Serving Size | Calories | Total Fat (g) | Saturated Fat (g) | Trans Fat (g) | Cholesterol (mg) | Sodium (mg) | Total Carb (g) | Dietary Fiber (g) | Total Sugars (g) | Added Sugars (g) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Blackberry Tangerine Dunkin' Zero - Large | Large | 25 | 0 | 0 | 0 | 0 | 250 | 12 | 1 | 0 | 0 |

28. Nowhere do the Nutrition Facts panels or any other labeling disclose the amount of allulose present or indicate that allulose is added sugar.

29. A reasonable, ordinary consumer encountering an unqualified representation that a food product contains "zero sugar" would reasonably understand that representation according to its ordinary meaning: that the Products contain no sugar.

30. The Representations are material. Sugar content is among the most important characteristics of food products, especially to consumers who are trying to watch their sugar.

---

[3] *Allergen and Ingredient Guide*, https://assets.ctfassets.net/ubkcphxhphh0/2H6Pn0NdBiqM0t2wSR5bMz/64172729c8192d284391870f9c850281/DD_W8_allergy_ingredient_guide.pdf (last updated Oct. 28, 2026).

[4] *Nutrition Guide*, https://assets.ctfassets.net/ubkcphxhphh0/7rROjtYxvOHQdLBTpamhuC/bbe6e300983a1fb1b5beb76ab4879556/DD_W8_nutrition_guide.pdf (last updated Oct. 28, 2026).

Defendants made the Representations because they knew that consumers pay attention to sugar content and would be more likely to buy, and pay more for, a product labeled as containing zero sugar.

31. Defendants have maintained these misrepresentations continuously and consistently across all marketing channels and throughout the class period.

**Allulose is Unambiguously Classified as a Sugar Under the Applicable Regulations.**

32. Allulose is a naturally occurring sugar found in small amounts in figs, raisins, wheat, maple syrup, and molasses. Chemically, allulose is a monosaccharide, similar to fructose.

33. Under the federal labeling regulations, "Total Sugars" are defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii). Because allulose is a monosaccharide, it falls within the regulation's definition of "Total Sugars."

34. Nothing in the regulatory text of § 101.9(c)(6)(ii) excludes allulose from the definition of "Total Sugars."

35. The FDA's regulatory history confirms this reading. In its 2016 final rule revising the Nutrition Facts label, the FDA specifically considered the treatment of allulose and stated that "[a]llulose, as a monosaccharide, must be included" in the Total Sugars declaration unless and until the agency adopted a different rule.[5]

36. Subsequently, the FDA issued guidance concerning allulose in October 2020. The guidance announced an exercise of enforcement discretion concerning the declaration of allulose

[5] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

on Nutrition Facts labels, pending further consideration through rulemaking.[6] It only addressed the FDA's enforcement position concerning how allulose should be treated for purposes of specified nutrition-panel declarations. It did not amend § 101.9(c)(6)(ii), did not promulgate a new definition of "Total Sugars," and did not formally exclude allulose from the regulatory definition of sugar.

37. Nor does the FDA's exercise of enforcement discretion establish that a manufacturer may affirmatively, and falsely, represent that a product contains "zero added sugar" while the product contains a substantial amount of added monosaccharide encompassed by the regulation's definition of "Total Sugars."

**Defendants' Products Contain Allulose, a Sugar.**

38. Contrary to Defendants' Representations, the Products contain a substantial amount of sugar per serving in the form of allulose.

39. Defendants' own allergen and ingredient guide confirms that the Products contain allulose. For example, allulose is the Products' third-listed ingredient on the ingredients list for the Blackberry Tangerine Dunkin' Zero flavor: "Sparkling Water; Blackberry Tango Energy Zero Sugar Flavored Syrup: Water, **Allulose**, Contains 2% or less of: Natural Flavors, Citric Acid, Guarana Seed Blend (Maltodextrin, Guarana Seed Extract, Caffeine), Taurine, Sodium Citrate, Fruit & Vegetable Juice (Color), Potassium Sorbate (Preservative), Steviol Glycosides, Xanthan Gum, Vitamin/Mineral Blend (Pyridoxine Hydrochloride, Cyanocobalamin, Calcium D pantothenate, Niacinamide Manganese Citrate, Zinc Sulfate, Maltodextrin)."[7]

---

[6] FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1 (Oct. 2020).
[7] *Allergen and Ingredient Guide*, *supra* note 3.

40. Under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). The fact that allulose is identified as the third ingredient further demonstrates that allulose is a substantial component of the Products, rather than a de minimis or incidental ingredient.

41. Thus, Defendants' own Nutrition Labels and Ingredient Lists establish the presence of a high quantity of allulose in the Products.

**Defendants' Representations on the Product Packaging is Misleading.**

42. Congress delegated authority to the FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act. The FDA promulgated detailed food-labeling regulations in 21 C.F.R. part 101.

43. FDA regulations distinguish mandatory or permitted declarations within the Nutrition Facts panel from nutrient-content claims appearing elsewhere on a label or in labeling. Information appearing as part of the Nutrition Facts panel is not itself a nutrient-content claim. 21 C.F.R. § 101.13(c).

44. By contrast, the Representations appear outside the Nutrition Facts panel on the Products' advertising and expressly characterizes the level of sugar in the Products. 21 C.F.R. § 101.13(b).

45. Nutrient-content claims are strictly prohibited unless specifically authorized by FDA regulations. 21 C.F.R. § 101.13(b) states, "[a] claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim) may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D."

46. Under 21 C.F.R. § 101.60(c)(1), a food may not be labeled as "sugar free" or "zero sugar" unless:

(i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; *and*

(ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar".

47. Upon information and belief, the Products do not comply with these requirements. The Products are "misbranded" under federal law because the labels bear impermissible and deceptive nutrient-content claims. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), 101.13(c), 101.60(c)(1). Misbranded food products may not lawfully be introduced into or delivered for introduction into interstate commerce. 21 U.S.C. § 331(a).

48. The Illinois Food, Drug, and Cosmetic Act ("IFDCA"), 410 ILCS 620/1/ *et seq*., incorporates applicable federal regulations into Illinois law. 410 ILCS 620/21(j) ("A federal regulation automatically adopted pursuant to this Act takes effect in this State on the date it becomes effective as a Federal regulation." Therefore, Defendants' Representations also violate Illinois regulations.

49. Plaintiff does not seek to enforce the FDCA or the IFDCA. Instead, Plaintiff seeks relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*., or under the theory of unjust enrichment.

50. Defendants prominently, openly, and repeatedly represent to consumers that the Products contain "zero sugar," but the Representations are objectively false and misleading.

51. A consumer examining the advertising of the Products would see the prominent product "Dunkin' Zero" name and the "zero sugar" representation immediately upon examination. The prominent advertising of the Representations establish that the claims are a key selling feature.

52. Reasonable consumers are not required to scrutinize the label of a product, examine ingredient lists, or conduct independent scientific research to verify express claims made on the front of the packaging. When a manufacturer makes an affirmative representation on the advertising and marketing materials, consumers may reasonably rely on those representations without conducting additional investigation.

53. An ordinary consumer who examines the Nutrition Facts, which are only available through the website, would encounter a declaration stating "0g Total Sugars" and "0g Added Sugars." This declaration reinforces the misleading impression created by Products' names ("Dunkin' Zero") and the "zero sugar" claims; they do not dispel it.

54. Even if a reasonable consumer notices "allulose" listed in the ingredients, which are only available for viewing through the website, the consumer has no reason—based on the conspicuous "zero sugar" claim and the name of the Products—to understand that allulose is a sugar. Consumers possess varying levels of knowledge about food chemistry and ingredient

formulations. The average consumer cannot be expected to possess specialized knowledge of whether specific ingredients are classified as sugars under FDA regulations.

55. Defendants bear the responsibility for ensuring that their express representations are truthful and not misleading. Ordinary consumers are entitled to rely on such representations without conducting independent investigation or possessing technical expertise.

**Defendants Knew the Products Contain Substantial Amounts of Allulose.**

56. Defendants knew that the Products contained substantial amounts of allulose before placing the Products on the market. Upon information and belief, Defendants were also aware that allulose is a sugar.

57. Defendants necessarily possessed this information because Defendants control the Products' formulation, ingredient specifications, manufacturing, packaging, labeling, and marketing.

58. Defendants also knew that consumers would encounter and consider the Representations when deciding whether to purchase the Products. The product names and advertisements highlight the "zero sugar" nature of the Products.

59. Upon information and belief, Defendants selected and used the Representations as part of a deliberate marketing strategy designed to distinguish the Products from competing products, including less costly versions of other beverages containing conventional sugar, and to appeal to consumers willing to pay a premium for products without any sugar.

60. Defendants' repeated use of the Representations in the Products' marketing and advertising was not the result of an isolated printing error, inadvertent omission, or one-time mistake. Rather, Defendants incorporated the Representations into the Products' branding and marketing and sold the Products to customers while using those misrepresentations.

61. Defendants' use of the Representations despite their knowledge of the Products' formulation further demonstrates that the Representations were an intentional and material component of Defendants' marketing and sale of the Products.

62. Upon information and belief, Defendants continue to market and sell the Products using the Representations.

63. Defendants had the ability to accurately describe the Products or to simply make no nutrient-content claim concerning sugar at all. Instead, Defendants affirmatively chose to market and sell the Products using the Representations, thereby inducing consumers seeking products without sugar to purchase the Products.

**Plaintiff and Consumers Were Injured by Defendants' Misrepresentations.**

64. Plaintiff purchased the Products for personal, family, or household use and not for resale.

65. Plaintiff purchased the products at Dunkin' through the DoorDash App. Most recently, Plaintiff purchased the Green Apple Dunkin' Zero for $7.68 on October 20, 2026.

66. Before purchasing the Products, Plaintiff encountered Defendants' Representations on the front label and product listing which Plaintiff understood to mean that the Products contained no sugar.

67. The Representations are material. Whether a food product contains sugar is a characteristic that a reasonable consumer, acting reasonably under the circumstances, would consider important in deciding whether to purchase it. Defendants' own conduct confirms materiality: Defendants placed the Representations on the front of every package and charged a premium for the Products bearing it.

68. Had Plaintiff known that the Products contained sugar, Plaintiff would not have purchased the Products or would have purchased them only for substantially less money.

69. The Products were worth less than they would have been had they actually conformed to Defendants' representation that they were "zero sugar."

70. Plaintiff paid a price that incorporated the value of the Defendants' Representations, but received Products that did not conform to those Representations.

71. Plaintiff therefore suffered economic injury at the point of purchase because Plaintiff did not receive the benefit of the bargain for which she paid. Instead, Plaintiff received Products that contained allulose, an added sugar, despite Defendants' representation that the Products were "zero sugar."

72. Plaintiff's injuries were caused by Defendants' misrepresentations. The challenged representations concern an important characteristic of the Products that Defendants affirmatively placed before consumers as a reason to purchase them.

73. The same deception affected other consumers who purchased the Products after encountering the Representations. Those consumers were exposed to the same materially misleading representations, purchased Products containing a substantial amount of sugar, and received Products that did not conform to Defendants' Representations.

74. As a direct and proximate result of Defendants' deceptive, misleading, unfair, and unlawful conduct described above, Plaintiff and members of the proposed Classes were injured in fact and suffered ascertainable economic losses when they paid a premium for products bearing Defendants' false or misleading Representations. The foregoing allegations establish Plaintiff's and the proposed Class members' claims arising from Defendants' common course of conduct, which forms the basis for the class allegations set forth below.

## CLASS ACTION ALLEGATIONS

75. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Federal Rules of Civil Procedure 23. The proposed classes are defined below (collectively, the "Classes"):

> **Illinois Class**: All persons who, during the maximum period of time permitted by law, purchased the Products in Illinois for personal, family, or household use, and not for resale.
>
> **Nationwide Class**: All persons in the United States who, during the maximum period of time permitted by law, purchased Defendants' Products for their personal, family, or household use, and not for resale.

76. Excluded from the Classes are: (i) Defendants, its assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils, and/or subdivisions; (iv) any judicial officer presiding over this matter and persons within the third degree of consanguinity to such judicial officer; and (v) Plaintiff's counsel and Defendants' counsel.

77. Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

78. **Numerosity:** Members of the Classes are so numerous that joinder of all members is impracticable. Upon information and belief, the Classes consist of thousands of purchasers. Accordingly, it would be impracticable to join all members of the Classes before the Court

79. **Predominance of Common Questions of Law and Fact**: There are numerous questions of law or fact common to all members of the putative Classes. Included within the common questions of law or fact are:

a. Whether the Products contain allulose and, if so, the amount of allulose contained in the Products;

b. Whether allulose is a sugar under the applicable laws, regulations, and standards governing the Representations;

c. Whether Defendants represented that the Products contained “zero sugar” or made substantially similar nutrient-content claims;

d. Whether these Representations were false, deceptive, misleading, or otherwise unlawful under the laws asserted herein;

e. Whether Defendants’ labeling, packaging, advertising, marketing, and sale of the Products constituted consumer-oriented conduct and/or advertising directed to consumers;

f. Whether Defendants knew that the Products contained allulose and that the Products did not conform to the Representations;

g. Whether the Representations were material and likely to mislead a reasonable consumer acting reasonably under the circumstances;

h. Whether Defendants’ Products are mislabeled under federal and state laws;

i. Whether Defendants’ conduct caused economic injury to purchasers of the Products and the appropriate method for measuring such injury; and

j. Whether Plaintiff and members of the Classes are entitled to actual damages or statutory damages and, if so, in what amount.

80. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Classes they seek to represent. Plaintiff, like the members of the Classes, purchased Defendants' Products labeled with Defendants' deceptive Representations. Plaintiff purchased the Products during the applicable class period and was exposed to the same challenged Representations. Plaintiff suffered the same type of economic loss as the other members of the classes. Plaintiff's and the Classes members' claims are based on the same legal theories and arise from the same course of conduct by Defendants.

81. **Adequacy**: Plaintiff is an adequate representative because she has no interests adverse to those of the Classes, are committed to the vigorous prosecution of this action, and have retained skilled and experienced counsel. Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4).

82. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action. Common questions of law and fact predominate over any questions affecting only individual members of the Classes, and a class action is superior because the common issues can be resolved through common evidence and a single adjudication. Individual joinder of all members of the Classes is impracticable, and no other available method of adjudication would provide a more efficient or consistent means of resolving the claims asserted herein. The prerequisites to maintaining this action pursuant to Fed. R. Civ. P. 23(b)(3) are satisfied for at least the following reasons:

a. The central issues in this action, including whether the Products contain allulose, whether allulose constitutes sugar under the applicable laws and regulations, what Defendants represented concerning the Products' sugar content, whether those Representations were false or misleading, whether Defendants knew the Products

did not conform to those Representations, and whether Defendants' conduct violated the applicable consumer-protection statutes, are common to the Class and predominate over any individual questions;

b. The Representations were disseminated to consumers through common labeling, packaging, advertising, and marketing materials, such that the principal evidence concerning Defendants' conduct, the content of the representations, and their alleged falsity or misleading nature will be common to the Classes;

c. To the extent individual issues exist concerning the circumstances of particular purchases, such issues do not predominate over the common questions because liability will principally turn on Defendants' uniform conduct, the Products' characteristics, the Defendants' representations, and the applicable law;

d. The economic injury alleged by Plaintiff and the Classes arises from the same alleged misconduct and can be established through common evidence and a common methodology. Individual differences, if any, in the amount paid, purchase date, quantity purchased, or resulting monetary recovery do not defeat predominance where the existence and methodology of the alleged injury can be established through common proof;

e. Given the relatively modest value of individual members of the Classes claims compared with the cost and burden of individual litigation, many members of the Classes would have little incentive or ability to pursue their claims individually. A class action therefore provides an effective mechanism for members of the Classes to obtain relief for alleged injuries that might otherwise go unremedied;

f. Members of the Classes have no substantial interest in individually controlling the prosecution of separate actions because the claims arise from Defendants' common course of conduct and present substantially overlapping factual and legal issues;

g. Concentrating the claims in a single proceeding is desirable because the alleged misconduct involves common Products, common Representations, common labeling and marketing practices, and common questions concerning Defendants' conduct. A single proceeding will promote consistent adjudication of those issues and avoid unnecessary duplication of discovery, motion practice, expert testimony, and trial proceedings;

h. Individual litigation would create a substantial risk of inconsistent or varying adjudications concerning the same Products, Representations, and underlying conduct. Class-wide adjudication will promote consistency and judicial economy;

i. There are no pending individual actions known to Plaintiff that would make separate adjudication a preferable method of resolving the controversy, and concentrating the claims in this forum is desirable and efficient; and

j. This action is manageable as a class action because the central liability issues are capable of resolution through common evidence and because any individualized issues concerning damages or other forms of relief can be addressed through appropriate class-wide methodologies, claim procedures, or other case-management mechanisms ordered by the Court.

## CLAIMS FOR RELIEF

## COUNT I
## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT 815 § 505/1 ET SEQ. ("ICFA")
**(on Behalf of Plaintiff and the Illinois Class Against all Defendants)**

83. Plaintiff realleges and reincorporates every factual allegation set forth in the preceding paragraphs as though fully set forth herein.

84. Plaintiff brings this claim individually and on behalf of the Illinois Class against Defendants.

85. Plaintiff and other Illinois Class members are "persons" within the context of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1(c).

86. Defendants are "persons" within the context of the ICFA, 815 ILCS 505/1(c).

87. Plaintiff and the proposed Illinois Class are "consumers" who purchased the Products for personal, family, or household use within the meaning of the ICFA, 815 ILCS 505/1(e).

88. In their sale of the Products throughout the State of Illinois, at all relevant times herein, Defendants conducted business and trade within the meaning and intendment of the ICFA, 815 § 505/2.

89. The ICFA, 815 ILCS 505/2, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

90. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2.

91. By the acts and conduct alleged herein, Defendants engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing that the Products are "zero sugar." Those Representations are false or misleading because Defendants add allulose—a sugar—to each Product during processing. The Products do not conform to Defendants' Representations.

92. The foregoing deceptive acts and practices were directed at consumers.

93. The foregoing deceptive acts and practices are misleading in a material way because they misrepresent the nature, composition, sugar content, quality, and value of the Products.

94. As a result of Defendants' deceptive practices, the Illinois Class members suffered an economic injury because they would not have purchased the Products, or would have paid less for them, had they known that Defendants add a sugar to the Products and did not conform to the Representations.

95. On behalf of herself and the Illinois Class members, Plaintiff seeks to recover actual economic damages, and reasonable attorneys' fees and costs, as provided under ILCS 815 505/10a. Plaintiff and the Illinois Class are also entitled to injunctive relief, seeking an order enjoining Defendants' unfair and/or deceptive acts or practices.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Nationwide Class Against all Defendants)**

96. Plaintiff realleges and reincorporates every factual allegation set forth in the preceding paragraphs as though fully set forth herein.

97. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendants.

98. Plaintiff and the Nationwide Class members conferred a benefit on Defendants in the form of revenues Defendants derived from their purchases of the Products.

99. Defendants knew of the benefit Plaintiff and the Nationwide Class conferred on it.

100. Defendants have been unjustly enriched by retaining revenues from Plaintiff's and Nationwide Class members' purchases. That retention is unjust because Defendants misrepresented that the Products are "zero sugar" causing purchases that otherwise would not have occurred or would have occurred only at lower prices.

101. Defendants accepted and retained the benefit of revenues derived from sales of the Products to Plaintiff and the Nationwide Class.

102. Defendants have thereby profited under circumstances that make it unjust for Defendants to retain the benefit.

103. Plaintiff and the Nationwide Class are therefore entitled to restitution in the form of revenues derived from Defendants' sale of the Products.

104. As a direct and proximate result of Defendants' actions, Plaintiff and the Nationwide Class have suffered damages in an amount to be proven at trial.

105. Plaintiff and the Nationwide Class have suffered injury in fact and lost money as a result of Defendants' conduct.

106. Plaintiff and the Nationwide Class lack an adequate remedy at law with respect to this claim and seek equitable relief as allowed by law.

107. Legal remedies available to Plaintiff and the Nationwide Class are inadequate because they are not as prompt, certain, or efficient as equitable relief. Damages are not as certain as restitution because the standard that governs restitution is different from the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff

has failed to adduce sufficient evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money a defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles plaintiffs to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not as certain as restitution because such claims require different elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

108. Equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from the respective purchases of the Products are determined to be less than the price premiums they paid. Without compensation for the full price premiums, Plaintiff and the Nationwide Class would be left without the parity in purchasing power to which they are entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of each member of the proposed Classes, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Defendants as follows:

a. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under Federal Rule of Civil Procedure Rule 23, including the appointment of Plaintiff's counsel as Class Counsel;

b. For an order declaring that Defendants' conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, consistent with applicable law and only under causes of action that permit such relief;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendants to cease labeling, marketing, and selling the Products with the Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendants' conduct; and

h. For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit.

## JURY DEMAND

Plaintiff, individually and on behalf of each member of the proposed Classes, hereby demands a trial by jury for all issues triable by jury.

Dated: November 17, 2026

Respectfully submitted.

*/s/ Kelly K. Iverson*
Kelly K. Iverson (Bar No. 307175)
Nicholas A. Colella (Bar No. 1002941)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Kelly@lcllp.com
NickC@lcllp.com

*Attorney for Plaintiff and the Proposed Class*